UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN NAVY NOVIKOFF, | No.  2:11-cv-03023-MCE-EFB |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

John Navy Novikoff ("Plaintiff") brought this action against the United States of America ("Defendant"), seeking damages for Defendant's willful failure to guard or warn of a dangerous condition located on its property in violation of California Civil Code section 846.  Currently before the Court is Defendant's Motion for Summary Judgment ("Motion").  For the reasons set forth below, Defendant's Motion is DENIED.[1]

///
///
///
///
///

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(g).

1

1

## BACKGROUND[2]

2

3



This action stems from a bicycle

4
accident that occurred in September 2009

5
when Plaintiff crashed into a fence enclosure

6
while participating in a time trial race on a path

7
adjacent to a canal.  (Mem. of P.&A. in Supp.

8
of Def.'s Mot. for Summ. J., ECF No. 34-1 at

9
4.)[3]  An entity unrelated to Defendant

10
organized the race.  Defendant issued a

11
permit, however, allowing the race to be

12
conducted on the path it owns and maintains.

13
(ECF No. 34-1 at 4; Pl.'s Dep. Tr. Excerpts, ECF No. 39 at 8).  While the path is a

14
maintenance road for the adjacent canal, it is also open for public use, including for

15
walking, running and cycling.  (EFC No. 34-1 at 4.)  Defendant uses the canal to

16
transport water and uses the path to maintain the canal and requisite water transporting

17
equipment.  (Exs. Supporting Def.'s Mot. for Summ. J., ECF No. 34-3 at 23.)

18
On the portion of the path where Plaintiff's accident occurred, Defendant had

19
installed, approximately forty years ago, a bright yellow head gate, which is a large metal

20
fixture used to withdraw water from the canal.  Id.  (ECF No. 39 at 20.)  The head gate

21
protrudes into the path and is surrounded by a chain link fence (hereafter "Enclosure")

22
intended to restrict the public's access to the head gate itself.

23

24
[2] The facts are taken, sometimes verbatim, from Plaintiff's Statement of Undisputed Facts.  (ECF

25
No. 36.)  Also included is a copy of a photograph that Plaintiff submitted of the relevant portion of
Defendant's property.  Use of the photograph is intended to add clarity to the Court's physical description.

26
(ECF No. 34-1 at 13.)

27
[3] Time trials are generally conducted so that riders race only the clock, entering the course at
staggered starting times so that they do not encounter each other while racing.  (Expert Witness

28
Disclosures Ex. 1, ECF No. 30-1 at 2.)

1   (Expert Witness Disclosures Ex. 3, ECF No. 30-3 at 11).[4]  The fence that surrounds the

2   head gate juts out at a ninety degree angle from the canal and therefore sits

3   perpendicular to the path.  Id.  The entire enclosure protrudes into the path

4   approximately five feet.  Id. at 3.

5        At the time of the accident, the head gate itself was painted bright yellow and the

6   fence along the path and Enclosure was gray.  (ECF No. 34-1 at 4; Opp'n to Mot. for

7   Summ. J., ECF No. 37 at 6.)  At some point in the past, Defendant had painted the

8   enclosure fence white and placed white object markers with reflectors on the fence in

9   both directions.  (ECF No. 37 at 6.)  However, over time, the white paint on the

10  Enclosure faded away, so the fence was gray at the time of the accident.  In addition, the

11  reflector facing the direction from which Plaintiff was traveling had long since fallen off.

12  (ECF No. 30-3 at 4-5; Expert Witness Disclosures Ex. 2, ECF No. 30-2 at 13.)

13  Moreover, in 2005, Defendant had contracted to have the path maintained and had

14  specified in that maintenance contract that the CalTrans street and road standards were

15  to be used, but those standards were not followed.  (ECF No. 37 at 6.)

16       Ultimately, while racing in his time trial, Plaintiff rode directly into the Enclosure at

17  a high rate of speed.  He suffered a concussion, contusions and lacerations to his right

18  shoulder, multiple fractures of his left hand and lacerations and other injuries to his right

19  leg.  (ECF No. 34-1 at 4; Expert Witness Disclosures Ex. 5, ECF 30-5 at 2-3.)  Prior to

20  Plaintiff's accident, no accidents related to the Enclosure had been reported.  (ECF

21  No. 34-1 at 4.)

22  ///

23  ///

24  ///

25  ///

26

27  [4] Defendant objects to the Court considering Plaintiff's expert reports because the reports are
    unsworn and therefore inadmissible for consideration on the present motion.  The Court has considered
    the objection and determined that Plaintiff's submitted expert reports may be admitted because Plaintiff

28  subsequently filed sworn declarations from his experts.  (ECF No. 42.)

1

2

**STANDARD**

3   The Federal Rules of Civil Procedure provide for summary judgment when "the

4   movant shows that there is no genuine dispute as to any material fact and the movant is

5   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

6   Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

7   dispose of factually unsupported claims or defenses.  Celotex Corp., 477 U.S. at 325.

8   In a summary judgment motion, the moving party always bears the initial

9   responsibility of informing the court of the basis for the motion and identifying the

10   portions in the record "which it believes demonstrate the absence of a genuine issue of

11   material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

12   responsibility, the burden then shifts to the nonmoving party to establish that a genuine

13   issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

14   Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

15   253, 288-89 (1968).

16   In attempting to establish the existence or non-existence of a genuine factual

17   dispute, the party must support its assertion by "citing to particular parts of materials in

18   the record, including depositions, documents, electronically stored information, affidavits

19   or declarations . . . or other materials; or showing that the materials cited do not establish

20   the absence or presence of a genuine dispute, or that an adverse party cannot produce

21   admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The nonmoving party

22   must demonstrate that the fact in contention is material, i.e., a fact that might affect the

23   outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S.

24   242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper

25   Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The nonmoving party must also

26   demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

27   such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,

28   477 U.S. at 248.

1   In other words, the judge needs to answer the preliminary question before the evidence

2   is left to the jury of "not whether there is literally no evidence, but whether there is any

3   upon which a jury could properly proceed to find a verdict for the party producing it, upon

4   whom the <u>onus</u> of proof is imposed." <u>Anderson</u>, 477 U.S. at 251 (quoting <u>Improvement</u>

5   <u>Co. v. Munson</u>, 81 U.S. 442, 448 (1871)) (emphasis in original).  As the Supreme Court

6   explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its

7   opponent must do more than simply show that there is some metaphysical doubt as to

8   the material facts." <u>Matsushita</u>, 475 U.S. at 586.  Therefore, "[w]here the record taken as

9   a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

10  'genuine issue for trial.'" <u>Id.</u> 87.

11       In resolving a summary judgment motion, the evidence of the nonmoving party is

12  to be believed, and all reasonable inferences that may be drawn from the facts placed

13  before the court must be drawn in favor of the nonmoving party.  <u>Anderson</u>, 477 U.S. at

14  255.  Nevertheless, inferences are not drawn out of the air, and it is the nonmoving

15  party's obligation to produce a factual predicate from which the inference may be drawn.

16  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>,

17  810 F.2d 898 (9th Cir. 1987).

18

19                              **ANALYSIS**

20

21       **A.      Immunity from Liability**

22

23       Plaintiff may sue Defendant because Defendant waived its sovereign immunity

24  from liability for tortious conduct by its employees within the scope of their employment

25  when it enacted the Federal Torts Claim Act ("FTCA").  <u>Termini v. U.S.</u>, 963 F.2d 1264,

26  1265 (9th Cir. 1992).  The FTCA renders Defendant liable in tort to the same extent as a

27  private individual under the law of the place where an injury occurs.  <u>Id.</u>

28  ///

1    However, "an action under FTCA exists only if the State in which the alleged misconduct

2    occurred would permit a cause of action for that misconduct to go forward." Carlson v.

3    Green, 446 U.S. 14, 23 (1980).  Therefore, "[if], under the laws of the State where the

4    United States' activity takes place, suit could not be brought against a private individual

5    for engaging in such activity, then a cause of action may not be maintained against the

6    United States either." Termini, 963 F.2d at 1266.

7          California tort law governs this case because Plaintiff's accident took place in

8    California.  28 U.S.C. § 1346(b)(1).  California Civil Code section 846 provides private

9    landowners with substantial immunity from liability for injuries incurred by those entering

10   or using their land for recreational purposes.  Cal. Civ. Code § 846.  Indeed, the general

11   rule is that a land owner "owes no duty of care to keep the premises safe for entry or use

12   by others for any recreational purpose." Id.  There are, however, three exceptions to this

13   rule.  Liability may still attach if: (1) a landowner's "willful or malicious failure to guard or

14   warn against a dangerous condition, use, structure or activity" caused the injury; (2) the

15   injured person paid consideration to use the property; or (3) the injured person was

16   expressly invited by the landowner rather than merely permitted to use the property.  Id.

17         In the instant case, Plaintiff did not pay Defendant to ride his bike on the path, nor

18   did Defendant expressly invite Plaintiff to use the path.  (ECF No. 34-1 at 4.)  The time

19   trial was run by an entity unrelated to Defendant, and Plaintiff registered with that entity

20   in order to participate in the race.  (ECF No. 34-1 at 4.)  Therefore, Defendant's Motion

21   turns on whether Defendant willfully or maliciously failed to "guard or warn against a

22   dangerous condition, use, structure or activity."  Cal. Civ. Code § 846.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

6

1

2

**B.    Willful Misconduct**

3       In assessing whether a landowner's actions amount to "willful and malicious

4   behavior" within the meaning of California's Recreational Use Statute, courts must look

5   at whether the landowner has: (1) actual or constructive knowledge of the peril to be

6   apprehended; (2) actual or constructive knowledge that injury is probable, as opposed to

7   possible; and (3) conscious failure to act to avoid peril.  Termini, 963 F.2d at 1267.

8   Courts consider these three elements essential, and each has to be met in order for

9   Plaintiff to overcome a motion for summary judgment.  Id.

10

11           **1.    Actual or Constructive Knowledge of the Peril**

12

13       Defendant claims that it had no knowledge, constructive or actual, that a peril

14   existed because the Enclosure had not caused any accidents since it had been built

15   forty years earlier.  (ECF No. 34-1 at 6.)  Defendant has confused the issue of probability

16   that an injury will result with the issue of whether actual danger is present.

17       Defendant built the Enclosure so that a chain link fence juts out at a ninety degree

18   angle five feet into a path where the general public is permitted to walk, run and bike.

19   (ECF No. 30-3 at 3; EFC No. 34-1 at 4.) The Enclosure effectively obstructs oncoming

20   traffic, and those using the path must take measures to avoid crashing into it.  The

21   Enclosure is an obvious danger.  Termini, 963 F.2d at 1267.

22       The facts in this case are analogous to those in Termini, where the court

23   determined that a road ending at a cliff was a "peril to be apprehended."  Likewise, a

24   reasonable jury might conclude that an obstruction five feet into a path used by bikers,

25   runners and cyclists is an obvious peril.  Id.

26       Additionally, Plaintiff's expert, William Neuman, determined that because the

27   fence of the enclosure is the same color as the fence lining the path, there is a

28   camouflage effect.  (ECF No. 30-3 at 3-4.)

7

1    The camouflaging makes it difficult to detect that the fence protrudes onto the path until

2    a person is much closer than three hundred feet away, which is the distance that the

3    Enclosure can first be seen by a user on the path.  Id.  This makes the enclosure

4    "unusually dangerous."  Id. at 4.  Construing this evidence in Plaintiff's favor, the Court

5    concludes that a reasonable jury could determine that a danger actually existed.

6        Nor can Defendant claim a lack of constructive knowledge, since it built the

7    Enclosure and undertook safety precautions such as painting the head gate yellow,

8    fencing it with a white fence that contrasted with the road, utilizing reflectors and

9    widening the path.  (ECF No. 37 at 5).  The circumstances in this case are thus again

10   similar to Termini, where the court found the United States had knowledge of the

11   relevant peril when it had merely graded the road in question.  Termini, 963 F.2d at

12   1267.  A reasonable jury could likewise conclude that Defendant had either actual or

13   constructive knowledge of the peril in this case.

14

15            **2.        Actual or Constructive Knowledge that Injury is Probable**

16

17       Defendant argues against the existence of a probability of an injury because the

18   Enclosure is an obvious structure that should be avoided.  (ECF No. 34-1 at 6.)  Further,

19   Defendant argues no accidents have occurred at this location in the past forty years.

20   (ECF No. 34-1 at 4.)  However, even Defendant acknowledges that the absence of

21   accidents is not dispositive.  Termini, 963 F.2d at 1269.

22       In fact, some of the best indicators that Defendant knew injury was probable are

23   its own actions.  As stated above, Defendant had previously taken many steps to make

24   the Enclosure more obvious in an attempt to help people avoid hitting the structure.  If

25   Defendant did not think it was probable that someone or something was going to crash

26   into the Enclosure, resulting in some sort of damage, there would be no need to have

27   taken such actions.

28   ///

1   Plaintiff's expert also opines that injury was probable.  (ECF No. 30-3 at 5.)  The

2   reduction in sight lines by the preceding curve means that, when approaching from the

3   direction that Plaintiff was riding, the Enclosure only becomes visible at a distance of

4   three hundred feet.  Id. at 3.  Assuming the cyclist was able to immediately recognize the

5   obstruction as soon as it became visible, a cyclist traveling at time trial speeds would

6   only have 6.8 to 8.2 seconds to avoid the Enclosure.   (ECF No. 37 at 5-6.)  However,

7   the camouflaging effect explained above, coupled with certain cycling techniques,

8   reduces the time a rider would have to avoid the obstruction considerably because the

9   rider would not recognize the obstruction until he is much closer.  (ECF No. 30-3 at 3-6.)

10  Similarly to Termini, where the court determined the lack of room for error led to more of

11  a probability of injury, here, the reduction in reaction time caused by the camouflaging

12  effect and riding style also can result in that finding.  963 F.2d at 1268.

13  Plaintiff's expert also asserts that Defendant did not follow mandatory guidelines

14  required by the Reclamation Manual for dealing with an obstruction like the Enclosure.

15  (ECF No. 30-2 at 3, 13.)  For example, according to that expert, the markings on the

16  ground do not conform to the mandatory standards and required inspections did not take

17  place, as is evidenced by the missing reflector.  Id. at 3-6, 13.

18  For its part, Defendant disputes that these guidelines are mandatory.  (Def.'s

19  Supplemental Expert Disclosures, ECF No. 33 at 1-2.)  Regardless, under the relevant

20  case law, a lack of compliance with known safety regulations is an important factor in

21  determining whether the tortfeasor possessed constructive knowledge that injury was

22  probable.  Rost v. U.S., 803 F.2d 448, 452 (9th Cir. 1986).  Initially, the Enclosure

23  appears like a large and obvious structure that must be avoided, but given the expert

24  opinions on speed and distance, a factual dispute remains as to whether Defendant

25  knew that injury was probable.

26  ///

27  ///

28  ///

9

1

2

### 3.     Conscious Failure to Act to Avoid the Peril

Defendant has consciously acted to some extent to avoid the peril caused by the Enclosure.  As stated above, Defendant painted the head gate yellow, painted the Enclosure white to contrast against the other fence, put reflectors on the outside of the gate, widened the path around the Enclosure, re-routed the centerline of the path around the Enclosure and contracted to have the road maintained according to the CalTrans standards.  (ECF No. 34-1 at 4; ECF No. 37 at 6; ECF No. 30-3 at 4.)  These are all acts that were an effort to avoid the peril.  However, Defendant failed to maintain the precautions that were taken.  See Bacon v. Southern Cal. Edison Co., 53 Cal. App. 4th 854, 859 (1997) ("The nonmoving party in a summary judgment motion can demonstrate that there is a triable issue of fact in regards to whether the Defendant failed so completely to maintain the actions that were taken that its conduct became willful or malicious.").

The paint on the fence had faded, the obstacle reflectors had rusted off and regular inspections and maintenance did not take place.  (ECF No. 30-3 at 4-5; ECF No. 30-2 at 4-5).  Based on these facts, it can be inferred for the purposes of summary judgment that the required inspections did not take place, or were woefully inadequate and rise to the level of a question of whether the failure constituted conscious failure to act.

Additionally, as mentioned above, Defendant did not follow the guidelines in the Reclamation Manual.  (ECF No. 30-2 at 3, 13).  For example, these guidelines required certain markings on the path to help people avoid the Enclosure.  Those markings were completely absent.  Id. at 6, 13.

Moreover, the evidence shows that Defendant was aware of these standards and apparently intended to implement them, since they were included in the maintenance contract.  Those precautions were nonetheless never implemented.  (Pl.'s Exs. Ex. 1, ECF No. 38-1 at 24; ECF No. 30-2 at 13.)

1   Defendant completely failed to ensure that contracted safety precautions were

2   implemented and failed to remedy the situation afterward.  When an act is done with an

3   absolute disregard for its consequences, it can be considered willful misconduct.

4   Manuel v. Pacific Gas & Elec. Co., 173 Cal. App. 4th 927, 947 (2009).

5           The combination of all the above facts arguably rises above the level of regular

6   negligence.  Whether it rises to the level of conscious failure is a determination that is

7   better left to a jury.  Therefore, whether Defendant consciously failed to act to avoid the

8   peril also turns on disputed facts.

9

10                          **CONCLUSION**[5]

11

12          For the reasons described above, Defendant's Motion for Summary Judgment is

13   DENIED.

14          IT IS SO ORDERED.

15   Dated:  October 26, 2013

16

17

18   _____

     MORRISON C. ENGLAND, JR., CHIEF JUDGE

19   UNITED STATES DISTRICT COURT

20

21

22

23

24   _____

25          [5] This case hinges on whether willful misconduct exists; therefore, the assumption of the risk
     defense was not discussed in this order.  Regardless of the ultimate finding, the assumption of the risk
26   defense will either not be necessary or not available.  If it is ultimately determined that Defendant did not
     act with "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or
27   activity," then immunity is appropriate under California Civil Code and the assumption of the risk defense is
     not needed.  Cal. Civ. Code § 846 .  On the other hand, if it is determined that Defendant's actions were
28   willful or malicious, the assumption of the risk defense is not available because Defendant's actions would
     rise to the level of reckless or intentional.  Knight v. Jewett, 3 Cal. 4th 296, 320 (1992).