UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN NAVY NOVIKOFF,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 2:11-CV-03023-MCE-EFB<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This case was tried before the Court without a jury on January 25 through February 1, 2016. After considering the pleadings, the evidence, the argument, and briefs from counsel, the Court issues its Findings of Fact and Conclusions of Law.[1]

**FINDINGS OF FACT**

1.  This action stems from a bicycle accident that occurred September 2, 2009, when Plaintiff John Novikoff ("Plaintiff") crashed into a fence enclosure (the

---

[1] "To the extent that any of the Findings of Facts may be deemed Conclusions of Law, they also shall be considered conclusions. Likewise, to the extent that any of the Conclusions of Law may be deemed Findings of Fact, they shall be considered findings." United States v. Newmont USA Ltd. and Dawn Mining Co., No. CV-05-020-JLQ, 2008 WL 4621566 at *2 n.1 (E.D. Wash. Oct. 17, 2008), citing Miller v. Fenton, 474 U.S. 104, 113-14 (1985) (noting the difficulty, at times, of distinguishing findings of facts from conclusions of law).

1

1    "Enclosure") on the operations and maintenance road adjacent to the Folsom South
2    Canal (the "Canal Road") while training for a time trial race to be held on the Canal Road
3    on September 11, 2009.
4         2.    The Canal Road is owned and maintained by the United States
5    ("Defendant").
6         3.    The Canal Road is open for public (non-vehicle) recreational use, including
7    walking, running, and cycling.  The United States uses the Canal Road to maintain the
8    canal and associated water transportation equipment.
9         4.    Plaintiff was engaged in recreation (cycling) when the accident occurred.
10   Specifically, Plaintiff was surveying the course for the upcoming time trial race to better
11   understand the course and to identify potential obstacles.  The accident occurred in the
12   afternoon.  The weather was clear and sunny, and visibility was good.
13        5.    Plaintiff had never previously ridden on this portion of the Canal Road.  In
14   years of cycling, including a great deal of racing experience, Plaintiff had never before hit
15   a person, animal, wall or other object.
16        6.    Time trials are conducted so that riders race only the clock, entering the
17   course at staggered starting times so that they do not encounter each other while racing.
18        7.    Defendant issued a special use permit that allowed the time trial race to be
19   conducted on September 11, 2009.  Ex. 31.  Defendant had issued a permit for the
20   same activity the previous year.  Ex. 29.  The 2009 permit application stated that the
21   organizer intended to conduct the race annually.  Ex. 30, Item 12.
22        8.    There is no posted speed limit on the canal road.
23        9.    While scouting the course on September 2, 2009, Plaintiff crashed his
24   bicycle into a fence surrounding a bright yellow head gate ("Enclosure") at approximately
25   28 miles per hour, resulting in injury.  Plaintiff was traveling north at the time of the
26   accident.
27   ///
28   ///

2

1  10. The Enclosure protrudes five feet into the northbound ten foot road lane at a ninety-degree angle, and therefore sits perpendicular to the path. The useable lane of a rider proceeding north is suddenly reduced to five feet in width by the presence of the Enclosure. The yellow head gate surrounded by the Enclosure is a large metal fixture used to withdraw water from the canal, but has never been used for that purpose.

11. The Enclosure consists of a galvanized chain link fence. The Enclosure is the same uniform gray color as the fence that separates the Canal Road from the canal itself.

12. Another rider, Ryan Ettl, testified that at some time earlier, he had also nearly run into the Enclosure while traveling north, but managed to avoid it.

13. At some point in the past, presumably at the time of construction, Defendant had placed white object markers with orange reflectors on the outer corners of the Enclosure on both the north side, which faces away from oncoming traffic, and the south side of the Enclosure, which faces oncoming northbound traffic. Over time, however, the object marker on the south side of the Enclosure (the direction facing traffic in the northbound road lane) fell off or was removed. The most reasonable inference based on the testimony is that the object marker on the traffic-facing side of the Enclosure was removed by U.S. Bureau of Reclamation ("Reclamation") maintenance workers because it interfered with the operation of the gate on the south side of the Enclosure, even though the object marker could easily have been replaced on the gate itself. This inference is bolstered by the absence of an object marker on the gate side of a protruding enclosure in another location, which was also missing from the gated, traffic-facing side of that Enclosure. Furthermore, Reclamation's former maintenance director for the Folsom South Canal testified that Reclamation's operations and maintenance personnel did not want the Canal Road used for recreation, resulting in "tension" between the agency's dual mission both to maintain the facility and to encourage recreation on the property.

///

3

14. Plaintiff was not expressly invited onto the operations and maintenance road adjacent to the Folsom South Canal by the United States.

15. Plaintiff did not pay any fee to recreate on the maintenance road adjacent to the Folsom South Canal.

16. There is no evidence that any person had collided with the Enclosure before Plaintiff's accident.

17. After Plaintiff's accident, both Plaintiff and the United States made efforts to determine whether anyone had previously collided with the Enclosure.

18. Neither Plaintiff nor the United States was able to locate any evidence that anyone had collided with the Enclosure before Plaintiff.

19. The Enclosure effectively obstructs oncoming traffic, and those using the path must take measures to avoid crashing into it.  Accordingly, the Enclosure is an obvious danger.

20. Because of the obstruction created by the Enclosure, the government originally widened the southbound lane of the Canal Road and restriped the center line so that it moved away from the Enclosure.  These measures, along with having painted the headgate bright yellow, and having placed object markers on the Enclosure, demonstrate that the government knew it had created a dangerous condition by installing the Enclosure in a way that obstructed the path.

21. As riders approach the Enclosure from the south (as Plaintiff did at the time of the accident), a hillside on the left physically obstructs any possible view of the Enclosure until the rider rounds a corner and is within 300 feet of the Enclosure.  At speeds of 25-30 mph, this corresponds to a period of 8.2 to 6.8 seconds, respectively.

22. Because the Enclosure is the same chain link composition and dull gray color as the fence along the eastern edge of the bike path, there is a camouflage effect that makes it difficult for a rider to discern that the Enclosure protrudes into the road until the rider approaches to a much closer distance.

///

4

23. Time trial riders typically rest their elbows on special, forward-projecting handlebars. In this position, the rider's torso becomes parallel to the ground, improving the rider's aerodynamic efficiency. In this posture, the rider's natural line of vision is at a downward angle, so that riders see most clearly what is on the road approximately 50 feet ahead of them, while using peripheral vision and lifting their head periodically to see further ahead. This aerodynamic posture enhances the camouflage effect, making the Enclosure indistinguishable from the background fence until the rider is within 150 to 100 feet of the Enclosure.

24. At his approximate speed of 28 mph, Plaintiff would have covered 150 feet in about 3.6 seconds, and 100 feet in about 2.5 seconds. Lowering one's head and using peripheral vision to scan ahead for such periods is common for bicyclists engaged in time trials.

25. An obstruction protruding into the road is a danger recognized in the Manual of Uniform Traffic Control Devices ("MUTCD"), a publication of the U.S. Department of Transportation, Federal Highway Administration. Section 9C.06 of the MUTCD, entitled Pavement Markings for Obstructions, provides:

> Guidance: In roadway situations where it is not practical to eliminate a drain gate or other roadway obstruction that is inappropriate for bicycle travel, white markings applied as shown in Figure 9C-8 should be used to guide bicyclists around the condition.

Ex. 32, page 810. The illustration in Figure 9C-8 B is very similar in appearance to the condition created by the Enclosure. According to the formula contained in Figure 9C-8, a white stripe from the outer edge of the Enclosure tapering to the fence over a distance of at least 100 feet should have been used to guide cyclists away from the Enclosure. A tapering stripe of much shorter distance is now in place and adds greatly to the visibility of the Enclosure for cyclists, including those riding with their heads pointed downward. Striping in accordance with Figure 9C-8 most likely would have prevented Plaintiff's accident.

///

26. The government failed to stripe the road leading up to the Enclosure in accordance with the MUTCD's guidance. Indeed, when other unidentified parties took matters into their own hands and painted tapered striping themselves after the accident, the government's Realty Specialist Marissa Novoa testified that she considered their conduct a criminal trespass.

27. Defendant was familiar with the MUTCD. Defense witnesses Monte Bowman and Scott Springer testified that they had consulted the MUTCD in the past. Although Reclamation was not required to stripe the road in accordance with the MUTCD, Reclamation employees were free to consult it when necessary. Defense witness Scott Springer conceded that complying with the MUTCD's guidance in dealing with the Enclosure would have been reasonably possible.

28. The Bureau of Reclamation has made itself subject to the provisions of the Reclamation Manual. The Reclamation Manual states that "[a]ll requirements in the Reclamation Manual are mandatory." These requirements include LND 01-03. Plaintiff's Ex. 27.1. Paragraph 37 of LND 01-03 provides that "Reclamation and its partners will do what is reasonably possible to protect the health and safety of visitors and staff and make every effort to identify and provide reasonable safeguards against known hazards." Paragraph 32 requires regular inspections of recreation areas and that necessary corrective action is to be taken "as soon as possible."

29. Defendant knew or should have known that the obstruction created by the Enclosure would, more likely than not, eventually lead to a serious accident. Defendant originally, at the time of construction, took steps to make the Enclosure more obvious in an attempt to help people avoid hitting the structure by widening the path at the Enclosure, restriping the center line, and installing object markers with reflectors on both sides of the Enclosure. If Defendant did not think it was probable that someone or something was going to crash into the Enclosure, absent some warning, there would have been no need to take such actions.

///

30. Defendant's initial assessment of the danger presented by the Enclosure was correct. The reduced sight lines associated with the curve leading to the Enclosure, the camouflage effect of the uniform color and composition of the Enclosure fence and the background fence against which it is seen on approach, the restriction of vision typical of time trial bicyclists' posture, and the high speeds associated with time trial racing all suggest that, in the absence of appropriate measures, it was probable that an accident like this one would occur eventually. The conditions the government created and allowed to prevail meant that there was no room for error for bicyclists engaged in lawful, expected, and permitted activity. The Court credits the testimony of both Neuman and Kearns (Ex. 15 at 6 of 10) that an accident at this location, eventually, was probable.

31. Defendant consciously failed to act to avoid the danger the Enclosure posed to cyclists. The missing object marker on the side of the Enclosure facing traffic was the result of it having been removed for the convenience of the maintenance personnel or, at best, Defendant's failure to make proper inspections of the facility and to replace the object marker. Similarly, Defendant's failure to provide the tapered striping called for in the MUTCD was a failure to discharge the mandatory duty to "identify and provide reasonable safeguards" against a known hazard. Given Defendant's awareness of the MUTCD, and the obviousness of the danger presented by the Enclosure, the absence of striping bolsters the Court's conclusion that Defendant consciously failed to act to avoid the danger presented by the Enclosure.

32. Plaintiff was free of substantial comparative fault. The accident evidently occurred because Plaintiff had his head down for a few seconds at the wrong time. Cyclists engaged in time trials typically ride with their heads down and scan the road with their peripheral vision for sizeable portions of the race. Furthermore, as Plaintiff testified, racers remove their eyes from the road to check their speed and to access and use their water bottles. Defendant's willful failure to do what is reasonably possible to protect the public from a known hazard has lasted for years and persists even today.

## CONCLUSIONS OF LAW

1.  California tort law governs this case because Plaintiff's accident took place in California.  28 U.S.C. § 1346(b)(1); FDIC v. Meyer, 510 U.S. 471, 478 (1994) (recognizing that state law controls liability under the FTCA).

2.  Because Plaintiff was engaged in recreation on the Canal Road and was neither personally invited nor paid a fee to do so, California's Recreational Use Immunity Statute governs his claim.  See Cal. Civil Code § 846.

3.  California Civil Code section 846 provides private landowners with substantial immunity from liabilities for injuries incurred by those who enter or use that land for recreational purposes. Accordingly, Defendant is not liable for Plaintiff's injuries unless he can show that Reclamation "willfully or maliciously failed to guard or warn against [the] dangerous condition, use, structure or activity" that caused such injuries.  Cal. Civil Code § 846.

4.  To show that Reclamation's actions or failure to act amount to "willful and malicious" behavior, Plaintiff must prove that Reclamation: (1) had actual or constructive knowledge of the peril to be apprehended; (2) had actual or constructive knowledge that injury is probable, as opposed to possible; and (3) consciously failed to act to avoid the probable injury.  Termini v. United States, 963 F.2d 1264, 1267 (9th Cir. 1992).

5.  Constructive knowledge is measured by an objective standard, i.e., whether a "reasonable person" would, under the same or similar circumstances, be aware of the dangerous character of the obstruction.

6.  A reasonable person would be aware that a five-foot obstruction jutting out into a road is not something a user of this or any other road would expect.  A reasonable person would recognize that those using the Canal Road must take measures to avoid crashing into the Enclosure.  Indeed, the Enclosure is an obvious danger.  See Termini, 963 F.2d 1267 ("Common sense dictates that a precipice at the end of a road constitutes a peril to be apprehended.").  Additionally, a reasonable person who viewed the

1  Enclosure from a distance, as Reclamation staff did on innumerable occasions, would
2  have been able to observe the camouflage effect that makes it difficult to detect that the
3  Enclosure protrudes into the Canal Road, making the Enclosure even more dangerous.
4         7.     Furthermore, Defendant had actual knowledge of the peril presented by the
5  Enclosure because it built the Enclosure and undertook safety precautions such as
6  painting the head gate yellow, utilizing object markers with reflectors on both sides of the
7  Enclosure, widening the Canal Road and restriping the center line around the Enclosure.
8  Termini, 963 F.2d at 1267 (the government had knowledge of the relevant peril when it
9  had merely graded the road in question).
10        8.     Defendant also had, at a minimum, constructive knowledge of the
11 probability of injury.  Defendant's decisions to widen and restripe the road, and to install
12 object markers on the Enclosure, suggest that Defendant considered an eventual
13 accident probable in the absence of such measures.  Furthermore, Defendant was
14 familiar with the MUTCD.  Section 9c.06 of the MUTCD provides specific guidance on
15 how to make protruding obstacles safe for cyclists.  Defendant's failure to comply with
16 the guidance in Section 9C.06 of the MUTCD bolsters the Court's conclusion that it
17 possessed constructive knowledge that injury was probable.  See Rost v. United States,
18 803 F.2d 448, 452 (9th Cir. 1986) (the fact that a condition was in violation of known
19 safety regulations was relevant in establishing knowledge of the probability of injury).
20        9.     Defendant consciously failed to act to avoid the peril to the public posed by
21 the Enclosure's obstruction of the Canal Road.  The Reclamation Manual required
22 inspections and reasonably possible corrective action to safeguard the public from
23 known hazards.  Reclamation installed an object marker on the south side of the
24 Enclosure but removed or at least failed to maintain it, such that it was missing at the
25 time of the accident.  Even after issuing permits for time trial racing, Defendant failed to
26 take the simple measures of re-installing the object marker or of adding tapered striping
27 to the surface of the road as called for in the MUTCD.  Under the circumstances, these
28 failures rise to the level of a conscious failure to act.  See Bacon v. Southern Cal. Edison

1  Co., 53 Cal. App. 4th 854, 859 (Cal. Ct. App. 1997) ("explaining that a failure to maintain
2  safety precautions can rise to the level of a conscious failure to act"); Termini, 963 F.2d
3  at 1269 (since taking preventative measures would have been "very easy," the
4  government consciously failed to act).

5     10.   Plaintiff has met his burden of proving, by a preponderance of the
6  evidence, that: (1) Defendant had knowledge that the Enclosure was a peril to be
7  apprehended; (2) Defendant had knowledge that injury as a result of the peril posed by
8  the Enclosure was probable; and (3) that Defendant consciously failed to act to prevent
9  the probable injury.  This Court therefore finds Defendant civilly liable for Plaintiff's
10 accident and injuries under California Civil Code section 846.

11    11.   Defendant has argued that the Court's imposition of liability here "will not
12 encourage . . . landowners to go to the time and expense of "hazard-proofing" their
13 roads for cyclists . . . instead, such a ruling would encourage landowners to close their
14 lands to public use to avoid the risks of liability or the costs of compliance." ECF No. 68
15 at 5.  Defendant's argument is not well taken.  This is a willful misconduct case, and
16 Defendant's liability is not a result of the fact that the Canal Road is open for recreation.
17 Rather, Defendant's liability is solely and completely predicated on its willful and
18 malicious failure to take any steps to safeguard members of the public from an obviously
19 dangerous condition.  Furthermore, the conclusions reached by this Court are unique to
20 the circumstances of this particular location.  There is no intention to make this an over-
21 arching, nationwide case of liability vs. "hazard proofing."
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

12. The parties agreed to bifurcate the issue of damages from liability at trial. In view of these Findings and Conclusions, the parties shall reconvene at the earliest practicable date for testimony from Plaintiff and his wife Kimberly on the issue of damages. The Court will take into account the damages amounts to which the parties have stipulated in deciding the amount of damages for which Defendant is liable. ECF No. 76.

IT IS SO ORDERED.

Dated: February 17, 2016

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT